FILED & ENTERED

MAR 17 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY zick        DEPUTY CLERK

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

NORTHERN DIVISION

| | |
|---|---|
| In re: ) | Case No. 9:10-bk-14135-PC |
| ) | |
| REGINALD ESCOBAR SILVA and ) | Chapter 7 |
| CARLITA MARIE SILVA, ) | |
| ) | |
| ) | **MEMORANDUM DECISION** |
| Debtors. ) | |
| ) | |

Before the court is the Motion for a Stay Pending Appeal from the Order Granting Relief from the Automatic Stay [Dkt. # 72] ("Motion") filed by Carlita Marie Silva ("Silva") on March 15, 2015, pursuant to Rule 8007(a) of the Federal Rules of Bankruptcy Procedure.[1] By application filed concurrently therewith, Silva seeks a hearing on the Motion set on shortened time. Having determined that the matter can be resolved without a hearing and to expedite Silva's motion in the appellate court for a stay pending appeal pursuant to FRBP 8007(b), the court will waive oral argument and deny the Motion based on the following findings of fact and

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

conclusions of law made pursuant to F.R.Civ.P. 52(a)(1), as incorporated into FRBP 7052 and applied to contested matters by FRBP 9014(c).[2]

1. <u>Statement of the Case</u>

On December 15, 2014, MBB Properties, LLC ("MBB") filed a motion seeking relief from the automatic stay to exercise its rights with respect to the real property and improvements occupied by Silva located at 1100 North 3rd Street, Lompoc, CA (the Subject Property"). On December 23, 2014, Silva filed a response in opposition to MBB's motion. Silva amended her response on January 19, 2015. After a hearing commenced on February 3, 2015, and concluded on March 10, 2015, the court entered an Order Granting Motion for Relief from the Automatic Stay under 11 U.S.C. 362 [Dkt. # 68] ("Order") on March 10, 2015, based on the following tentative ruling [Dkt. # 66] which was adopted as the court's findings of fact and conclusions of law at the end of the hearing:

> This motion for relief from the automatic stay has been filed pursuant to 11 U.S.C. § 362, LBR 4001-1, and LBR 9013-1. Debtor has filed a written response in opposition to the motion pursuant to LBR 9013-1(f)(1). **Appearances are required.**
>
> The court takes judicial notice of the Memorandum Decision [Dkt. # 18] and Order Denying Motion for Preliminary Injunction [Dkt. # 19] entered in Adversary No. 9:15-ap-01014-PC, <u>Silva v. The Bollag Family Trust, et al.</u>, on March 9, 2015. The court adopts and incorporates herein by reference the findings of fact and conclusions of law set forth in the Memorandum Decision.
>
> Debtor's objection that movant lacks standing to seek the relief requested in the motion is overruled. "Stay litigation is limited to issues of the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization." <u>Johnson v. Righetti (In re Johnson)</u>, 756 F.2d 738, 740 (9th Cir. 1985), <u>cert. denied</u>, 474 U.S. 828 (1985). "Hearings on relief from the automatic stay are thus handled in a <u>summary fashion</u>." <u>Id.</u> (emphasis added). "The validity of the claim or contract underlying the claim is not litigated during the hearing." <u>Id.</u> The court is "simply determin[ing] whether the creditor has a <u>colorable claim</u> to the property of the estate." <u>Biggs v. Stovin (In re Luz Intern, Ltd.)</u>, 219 B.R. 837, 842 (citing <u>Johnson</u>, 756 F.2d at 740) (emphasis added). <u>See</u> <u>Edwards v. Wells Fargo Bank, N.A. (In re Edwards)</u>, 454 B.R. 100,

---

[2] The court grants Silva's Request for Judicial Notice, Motion for Stay Pending Appeal ("Request") and takes judicial notice of each of the documents listed in the Request pursuant to F.R. Evid. 201.

2

105 (9th Cir. 2011) (holding that Wells Fargo's recorded Trustee's Deed established a sufficient "colorable" claim to satisfy standing). By virtue of the Trustee's Deed and Quitclaim Deed, movant has established at the very least a "colorable claim" to the subject property.

The motion is granted pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2). The stay is terminated as to the debtor and the debtor's bankruptcy estate with respect to the movant, its successors, transferees and assigns. Movant may enforce its remedies to obtain possession of the property in accordance with applicable law, but may not pursue a deficiency claim against the debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

Movant further requests in the motion that "extraordinary relief" be granted by the court. An order prohibiting for 180 days the subsequent filing of a bankruptcy case by the debtor or by another person or entity to whom the subject property may be transferred is in the nature of an injunction not specifically authorized by the Bankruptcy Code. Johnson v. TRE Holdings LLC (In re Johnson), 346 B.R. 190, 196 (9th Cir. BAP 2006). Nor does there "appear to be direct statutory authority for an order that bans the filing of future bankruptcy cases by other persons, bans automatic stays in future cases, and authorizes the sheriff to ignore a future bankruptcy case when conducting an eviction." In re Van Ness, 399 B.R. 897, 903 (Bankr. E.D. Cal. 2009). Therefore, a motion is not the appropriate vehicle for obtaining the "extraordinary relief" requested. Movant must seek this aspect of the relief by adversary proceeding. Johnson, 346 B.R. at 195. Congress has provided an "in rem" remedy in 11 U.S.C. § 362(d)(4). Section 362(d)(4) is the only "in rem" order available through a motion for relief from stay, which does not require an injunction. Johnson, 346 B.R. at 197 ("The structure of what Congress deemed it necessary to do in the post-2005 regime embodied by §§ 362(b)(20) and (d)(4) confirms the validity of our conclusion that the pre-2005 Code did not authorize an 'in rem' stay relief order to trump the automatic stay in future cases."). Movant does not allege a "scheme to delay, hinder *or* defraud" in qualifying circumstances and does not otherwise invoke § 362(d)(4). *See* 11 U.S.C. § 362(d)(4) (emphasis added). Accordingly, the movant's request for "extraordinary relief" is denied.

Movant seeks annulment of the stay, but there is no evidence to establish that annulment is necessary or warranted in the case. Accordingly, movant's request for annulment of the stay retroactive to the petition date is denied.

This order shall be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code. The 14-day period specified in FRBP 4001(a)(3) not is waived. All other relief is denied.

The Order grants MBB relief from the stay to exercise its rights with respect to the Subject Property.

3

On March 13, 2015, Silva filed a Notice of Appeal and Statement of Election [Dkt. # 70] in the case. Silva now seeks a stay pending appeal pursuant to FRBP 8007(a) to prohibit MBB from exercising its rights with respect to the Subject Property pending a final adjudication of the merits of her appeal.

2. <u>Facts Giving Rise to MBB's Stay Motion and the Order</u>[3]

On January 1, 2008, Silva and her husband, Reginald E. Silva, owned the Subject Property. They had owned and occupied the Subject Property since 1988. The Subject Property was encumbered by two deeds of trust: (1) a first deed of trust lien recorded on May 19, 2004, securing payment of a note in the original principal sum of $125,000, executed by Carlita M. Silva and Reginald Silva and payable to World Savings Bank, FSB dated May 13, 2004; and (2) a second deed of trust lien recorded on April 27, 2005, securing payment of a note in the original principal sum of $30,000 executed by Carlita M. Silva and Reginald Silva and payable to World Savings Bank, FSB dated April 22, 2005.

On September 3, 2008, a Notice of Default and Election to Sell Under Deed of Trust was recorded as to the <u>second</u> deed of trust. A Notice of Trustee's Sale was thereafter recorded on January 29, 2009. On August 12, 2009, a Trustee's Deed Upon Sale ("Trustee's Deed") was executed following a foreclosure sale conducted on August 10, 2009, at which the Subject Property was purchased by The Bollag Family Trust and Michael Bollag (collectively, "the Bollags") for the sale price of $34,127.49. The Trustee's Deed conveyed title to the Subject Property to the Bollags subject to the first deed of trust lien securing payment of the $125,000 note. Silva claims that, at the time, she was not aware of the foreclosure sale nor execution of the Trustee's Deed.

---

[3] This statement of the underlying facts giving rise to MBB's motion for relief from the automatic stay is drawn from the Memorandum Decision Regarding Plaintiff's Motion for Preliminary Injunction ("Memorandum") [Dkt. # 18] entered in Adversary No. 9:15-ap-01014-PC, <u>Silva v. The Bollag Family Trust, et al.</u> (the "Adversary Proceeding"), on March 9, 2015, which was adopted and incorporated by reference in the court's Tentative Ruling on MBB's stay motion on March 10, 2015. The court adopts and incorporates herein by reference the Memorandum, together with the Order Denying Preliminary Injunction [Dkt. # 19] entered on March 9, 2015.

On September 1, 2009, Todd Lyle ("Lyle"), an employee of MBB,[4] met with Silva "and informed her that the [Subject Property] had been sold pursuant to a properly noticed foreclosure sale held on August 10, 2009, and that The Bollag Family Trust and Michael Bollag were the new owners of the [Subject Property]."[5] In conjunction with her application for a preliminary injunction in the Adversary Proceeding, Silva testified that:

> I do recall a man coming to my house at about the time Todd Lyle says he did, September 1, 2009. This man told me I did not "own the property." I did not believe him. I was in the process of trying to negotiate a loan modification with the first mortgage, which was the same entity that held the second mortgage at the time. The person I was working with on the loan modification told me not to worry about what this man said. I believed her when she told me he did not own my house.[6]

On July 21, 2010, Wells Fargo Bank, N.A. ("Wells Fargo"), as successor in interest to World Savings Bank, FSB, caused a Notice of Trustee's Sale to be recorded as to the <u>first</u> deed of trust. On August 10, 2010, Silva and her husband filed a voluntary petition under chapter 13, in part, to stop the foreclosure by Wells Fargo. In their schedules, the Silvas disclosed in Schedule A that they owned the Subject Property valued at $195,000 in "Fee Simple." Neither the Bollags or MBB are listed in the list of creditors, mailing matrix, schedules or statements nor is the foreclosure sale conducted pursuant to the second deed of trust lien disclosed in response to Question # 5 of the Statement of Financial Affairs.

On November 10, 2010, an order was entered confirming the Silva's Chapter 13 Plan ("Plan"). The Plan provided for post-petition mortgage payments to be made directly to Wells Fargo on the $125,000 note, with arrears to be cured over a period of 60 months. Reginald E. Silva died in 2012. Silva is current on Plan payments, with about 7 payments remaining until completion of the Plan.

---

[4] MBB is owned and operated by Michael Bollag and the Bollag Family Trust.

[5] Memorandum, 3:3-4.

[6] Id. at 3:5-9.

5

1    On October 16, 2014, the Trustee's Deed was recorded in the Santa Barbara County

2 Recorder's Office – over 5 years after the Trustee's Deed was executed and delivered to the

3 Bollags. According to Lyle's testimony in opposition to issuance of a preliminary injunction in

4 the Adversary Proceeding:

> Michael Bollag and The Bollag Family Trust did not immediately record their Trustee's Deed Upon Sale because they inadvertently believed that they had purchased the [Subject Property] at a foreclosure sale conducted by the first trust deed holder, not the second. When they discovered their error, they attempted to contact the owners of the first trust deed to ascertain the loan payoff amount. However, the first trust deed holder would not discuss this with Michael Bollag, The Bollag Family Trust, and MBB Properties, LLC ("the "Bollag Entities"). The Bollag Entities were disinclined to become the record owners of the [Subject Property] because there was likely little, or no, equity in the [Subject Property] above what was owed to the first trust deed holder, and they did not want to risk have [sic] their credit sullied by getting foreclosed out by the first trust deed holder. Instead, Michael Bollag and The Bollag Family Trust decided not to become record owners, to allow Ms. Silva to live on the [Subject Property] without paying rent to them, and to see if the [Subject Property] increased in value over time to make it worthwhile for them to become record owners.[7]

On October 17, 2014, the Bollags executed a Quitclaim Deed, conveying the Subject Property to MBB. The Quitclaim Deed was recorded the same day. When the Trustee's Deed and Quitclaim Deed were recorded, there was no notice of Silva's bankruptcy in the chain of title; and, according to Lyle's testimony, the Bollags and MBB did not have any knowledge of Silva's bankruptcy.[8] On October 24, 2014, the Bollags and MBB served Silva with a Notice of New Ownership. Silva, through counsel, informed the Bollags and MBB that Silva had filed a chapter 13 petition on August 10, 2010. Lyle testified that "[t]his was the Bollag Entities' first and sole notification that Silva had filed Chapter 13 bankruptcy."[9]

---

[7] Id. at 4:4-13.

[8] Id. at 4:14-18.

[9] Id. at 4:19-21.

6

3. Standard for Issuance of Stay Pending Appeal

To authorize a stay pending appeal, the court must consider the following four factors:

(1) whether the stay applicant has made a strong showing that he is <u>likely to succeed on the merits</u>;

(2) whether the applicant <u>will be irreparably harmed</u> absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies.

<u>Nken v. Holder</u>, 556 U.S. 418, 434 (2009) (emphasis added). The party moving for a stay has the burden of proof on each of these elements, and the movant's failure to satisfy one prong of the standard dooms the motion. See <u>In re Irwin</u>, 338 B.R. 839, 843 (E.D. Cal. 2006).

"A stay is not a matter of right, even if irreparable injury might otherwise result." <u>Nken</u>, 556 U.S. at 433. Courts have discretion to grant a stay pending appeal based on the facts and circumstances of the particular case. <u>Id.</u> The burden of establishing "that the circumstances justify an exercise of that discretion" is on the party requesting a stay. <u>Id</u>. at 433-34. "The first two factors of the traditional standard are the most critical." <u>Id.</u> at 434. "It is not enough that the chance of success on the merits be 'better than negligible.'" <u>Id.</u> (quoting <u>Sofinet v. Immigration & Naturalization Serv.</u>, 188 F.3d 703, 707 (7th Cir. 1999). "Once an applicant satisfies the first two factors, the traditional stay inquiry calls assessing the harm to the opposing party and weighing the public interest." <u>Nken</u>, 556 U.S. at 435.

"There is a substantial overlap between these and the factors governing preliminary injunctions . . . ." <u>Id.</u> at 434. With respect to the elements that must be satisfied for a stay pending appeal, the court previously addressed each of the four elements in conjunction with Silva's application for a preliminary injunction in the Adversary Proceeding.

Likelihood of Success on the Merits

MBB sought relief from the automatic stay pursuant to §§ 362(d)(1) and (d)(2) to recover possession of the Subject Property. In opposition to the motion, Silva argued, <u>inter alia</u>, that her rights were superior to the rights of the Bollags in the Subject Property on the petition date, that

7

Bollags' Trustee's Deed was recorded in violation of the automatic stay and could be avoided, that MBB was not a bona fide purchaser for value, and that the Subject Property was necessary for an effective reorganization in her chapter 13 case.

Section 362(b)(3) states, in pertinent part, that the filing of a bankruptcy petition does not operate as a stay "of any act to perfect . . . an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b)." 11 U.S.C. § 362(b)(3). "Section 546(b) provides that a trustee's right to avoid a transfer pursuant to 11 U.S.C. §§ 544(a) or 549 is subject to any generally applicable law that permits perfection to relate back and to be effective against one who acquires rights in the property before the date of perfection." In re Stork, 212 B.R. 970, 971 (Bankr. N.D. Cal. 1997). "[R]ecordation of a foreclosure sale deed within fifteen days of the sale does not violate the automatic stay and is not avoidable pursuant to 11 U.S.C. §§ 544 or 549." Id.; see Cal. Civ. Code § 2924h(c). "[I]f a foreclosure sale purchaser does not qualify for protection under section 2924h(c) of the California Civil Code, it may still be protected by 11 U.S.C. § 549(c)" which "protects a purchaser regardless of the number of days after the sale the purchaser records the deed <u>as long as the deed is recorded before notice of the bankruptcy filing is recorded</u>." Stork, 212 B.R. at 972 (emphasis in original).

Section 549(a) authorizes a trustee to avoid an unauthorized transfer of estate property that occurs after the commencement of the case. 11 U.S.C. § 549(a). Section 549(c) states, in pertinent part:

> The trustee may not avoid under [§ 549(a)] a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser.

11 U.S.C. § 549(c).

In this case, the Bollags purchased the Subject Property at a duly conducted foreclosure sale on August 10, 2009, and received the Trustee's Deed. Following receipt of the Trustee's

8

Deed, the Bollags owned equitable title to the Subject Property and Silva owned legal title to the Subject Property. See Davisson v. Engles (In re Engles), 193 B.R. 23, 25 (Bankr. S.D. Cal. 1996) ("Until the deed from a prepetition foreclosure sale is recorded, a debtor retains legal title to the property."). On her petition date, Silva's legal title and possessory interest in the Subject Property became property of the estate and subject to the automatic stay. See, e.g., Hunt v. TRC Properties, Inc. (In re Hunt), 160 B.R. 131, 135 (9th Cir. BAP 1993) ("The legal title Hunt held in the Oxnard Property at the time her petition was filed became property of her estate."); Engles, 193 B.R. at 25 ("If the debtor files bankruptcy immediately following the sale, the legal title accompanies the debtor into bankruptcy and becomes property of the estate.").

On October 16, 2014, the Bollags recorded the Trustee's Deed --- more than five years after the foreclosure sale. Because recordation fell outside of the protection of Cal. Civ. Code § 2924h(c), the issue in the Adversary Proceeding was whether or not the Bollags' post-petition recording of the Trustee's Deed was excepted from the automatic stay under § 362(b)(3) by virtue of §§ 546(c) and 549(c). In denying issuance of a preliminary injunction, the court held that there was a likelihood that it was so excepted.

In the Adversary Proceeding, Silva, acting in place of a trustee, seeks to avoid the recording of the Trustee's Deed as an alleged unauthorized post-petition transfer of an interest in real property that is property of the estate. In denying Silva's request for a preliminary injunction, the court determined that the Bollags, against whom Silva is proceeding to avoid the transfer, are good faith purchasers. The Bollags purchased the Subject Property at a regularly conducted foreclosure sale on August 10, 2009. At the time, Silva was not in bankruptcy and there was no automatic stay in effect. The evidence supported a finding that the Bollags paid "present fair equivalent value" for the Subject Property at the foreclosure sale. The Bollags purchased the Subject Property with a winning bid of $34,127.49, subject to the first deed of trust which secured the balance due on the $125,000 note. The court took judicial notice of Wells Fargo's Proof of Claim # 11-2 which states that the balance owing on the $125,000 note on the petition date -- one year after the foreclosure sale -- was $162,141.75. Silva valued the Subject Property in Schedule A at $195,500. Finally, the Bollags did not have actual or

9

constructive notice of the commencement of Silva's bankruptcy case on August 10, 2010, nor did the Bollags have actual or constructive notice of Silva's bankruptcy when the Trustee's Deed was recorded. Lyle testified that the Bollags and MBB did not learn of Silva's bankruptcy until on or after October 24, 2014. There was no evidence to the contrary. The court determined that the Bollags did not violate the automatic stay when the Trustee's Deed was recorded on October 16, 2014. Once the Trustee's Deed was validly recorded, the Bollags held both legal and equitable title to the Subject Property -- which gave them the right to execute the Quitclaim Deed to MBB without violating the automatic stay. Under the circumstances, there was no need to annul the stay. Whether or not Silva has a claim against the Bollags for alleged fraud and/or recovery of amounts paid on account of the note secured by Wells Fargo's first deed of trust lien pursuant to her confirmed plan remains to be determined in the Adversary Proceeding; but for purposes of relief from the stay, the court determined that Silva's interest in the Subject Property was possessory, that she had no equity in the Subject Property, and that she had failed to carry her burden to show that her interest in the Subject Property was necessary for an effective reorganization under the circumstances.

In the Tentative Ruling adopted as the court's findings and conclusions, the court also determined that MBB had standing to seek relief from the stay:

> "Stay litigation is limited to issues of the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization." Johnson v. Righetti (In re Johnson), 756 F.2d 738, 740 (9th Cir. 1985), cert. denied, 474 U.S. 828 (1985). "Hearings on relief from the automatic stay are thus handled in a summary fashion." Id. (emphasis added). "The validity of the claim or contract underlying the claim is not litigated during the hearing." Id. The court is "simply determin[ing] whether the creditor has a colorable claim to the property of the estate." Biggs v. Stovin (In re Luz Intern, Ltd.), 219 B.R. 837, 842 (citing Johnson, 756 F.2d at 740) (emphasis added). See Edwards v. Wells Fargo Bank, N.A. (In re Edwards), 454 B.R. 100, 105 (9th Cir. 2011) (holding that Wells Fargo's recorded Trustee's Deed established a sufficient "colorable" claim to satisfy standing). By virtue of the Trustee's Deed and Quitclaim Deed, movant has established at the very least a "colorable claim" to the subject property.

Based on the foregoing, the court finds that Silva has failed to make "a strong showing that [she] is likely to succeed on the merits." Iken, 556 U.S. at 434.

10

2. <u>Likelihood of Irreparable Harm</u>

Silva argues that she will suffer irreparable harm in the absence of a stay pending appeal. As the court noted in its Memorandum, there is no remedy for loss of real property. The Subject Property is Silva's primary residence, and "loss of a primary residence constitutes irreparable harm." <u>Hernandez v. Downey Sav. & Loan Ass'n</u>, 2009 WL 704381, *9 (S.D. Cal. 2009). <u>See</u> <u>Nichols v. Deutsche Bank Nat'l Trust Co.</u>, 2007 WL 4181111, *3 (S.D. Cal. 2009) ("[I]mminent foreclosure of Plaintiff's residence presents a threat of irreparable harm."). Silva's losing her home would be an irreparable injury, but she has not demonstrated a strong likelihood of success on the merits of her appeal.

C. <u>Balance of Hardships and Public Interest</u>

Silva does not address the balance of hardships in her Motion nor has she demonstrated that she would experience more hardship than MBB if a stay pending appeal is denied. Given the record, this element tips in favor of MBB. Although there is a likelihood of irreparable harm, Silva has not established a likelihood of success on the merits of her appeal and MBB will suffer pending a final judgment if it is stayed from exercising its rights with respect to the Subject Property.

Nor does Silva's Motion address the final prong – where the public interest lies. "[C]onsiderations of the public interest involve testing whether the relief requested would affect the public at large, as opposed to the immediate parties to the [proceeding]." <u>Acton v. Fullmer (In re Fullmer)</u>, 323 B.R. 287, 305 (Bankr. D. Nev. 2005). Silva has not articulated a public interest that would be served by issuance of a stay pending appeal.

///

///

///

///

### III. CONCLUSION

For the reasons stated, Silva's Motion will be denied. A separate order will be entered consistent with this Memorandum Decision.

###



Date: March 17, 2015

Peter H. Carroll
United States Bankruptcy Judge